Filed 12/4/20  Ordaz v. Tate CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| RAFAEL ORDAZ, | F078328 |
| Plaintiff and Appellant, | (Super. Ct. No. BCV-17-100270) |
| v. | |
| HAROLD TATE, M.D., et al., | **OPINION** |
| Defendants and Respondents. | |

**THE COURT**[*]

APPEAL from an order of the Superior Court of Kern County.  David R. Lampe, Judge.

Rafael Ordaz, in pro. per., for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Danielle F. O'Bannon, Assistant Attorney General, Elizabeth S. Angres and Thomas M. McMahon, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiff Rafael Ordaz, a self-represented inmate, appeals from an order granting defendants' motion for summary judgment in a malpractice action brought against

---

[*] Before Detjen, Acting P.J., Smith, J. and Snauffer, J.

1

members of medical staff at the California Correctional Institution located in Tehachapi (CCI).

The trial court's ruling on the defendants' summary judgment motion and their objections to plaintiff's opposition papers and evidence included an order striking plaintiff's separate statement for failing to comply with the form and content requirements stated in Code of Civil Procedure section 437c, subdivision (b)(3) and California Rules of Court, rule 3.1350(f).[1]  The last sentence of subdivision (b)(3) of section 437c states that an opposing party's failure to comply with these requirements "may constitute a sufficient ground, in the court's discretion, for granting the motion." The proper exercise of this statutory discretion is addressed in several judicial decisions.

For instance, in *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64 (*Collins*), the court determined that when an opposing party's separate statement is improper or deficient, "an immediate grant of summary judgment is, *in most instances*, too harsh a consequence."  (*Id.* at p. 74, italics added.)  Thus, in most instances, the appropriate exercise of discretion is to give the opposing party an opportunity to file a proper separate statement.  (*Ibid.*)  Here, the trial court made no mention of the judicial decisions limiting its statutory discretion and, thus, provided no explanation for why this case, unlike *most instances*, warranted an immediate grant of summary judgment.  We have identified no grounds justifying treating this case differently than most instances and, therefore, conclude the order striking the separate statement and granting summary judgment was an abuse of discretion, rather than an exercise of informed discretion.

Another ground for reversal is the failure of defendants' moving papers to address all the theories of medical malpractice set forth in plaintiff's complaint.  In particular, defendants' separate statement of undisputed facts did not include the facts material to

---

[1] All further statutory references are to the Code of Civil Procedure and all subsequent references to a numbered "Rule" are to the California Rules of Court.

one of the types of malpractice alleged. Moreover, in the context of this case, the omission of the material facts from defendants' separate statement cannot be regarded as harmless because their other papers continue rather than counteract the omissions. First, defendants' declarations and exhibits do not address the factual question of whether medical staff, immediately after plaintiff's transfer to CCI and without examining him, confiscated the medication prescribed for him by the medical staff at his previous institution. Second, the expert opinions offered as to the standard of care did not assume the allegations were true and state the immediate confiscation without an examination was within the standard of care. Instead, the opinions were stated in general terms and did not specifically address the issue. Under the rules for interpreting evidence supporting a summary judgment motion, we cannot infer the broadly phrased opinions actually considered plaintiff's confiscation theory and, thus, impliedly opined that confiscation without examination did not breach the standard of care. (See § 437c, subd. (c) [inferences from the evidence].) Thus, the evidence presented is insufficient to carry the defendants' initial burden on that theory of liability.

  We therefore reverse and remand for further proceedings.

## FACTS

### *Parties*

  Plaintiff is incarcerated by the California Department of Corrections and Rehabilitation (CDCR). The defendants are medical personnel who either provided treatment to plaintiff while he was held at CCI or participated in the review of his administrative grievances regarding that treatment.[2]

  Defendant Harold Tate, M.D., has been employed at CCI as a physician and chief medical officer since 2004. He received his medical degree from the University of

---

[2] A prisoner's grievance regarding medical care is presented on form CDCR 602 HC (rev. 04/11), which is titled "PATIENT/INMATE HEALTH CARE APPEAL."

3

Massachusetts in 1979, finished his residency at St. Louis University Group Hospitals in 1982, and worked in private practice and for healthcare plans prior to working at CCI. Also, from 1994 through 1996, he was medical director at the Santa Barbara County Jails. In May and June of 2016, Dr. Tate saw plaintiff on five occasions.

Defendant Omolade Ogun, M.D., received a medical degree from the University of Lagos in 2000, obtained a physician's license from the Medical Board of California in April 2012, and finished her residency at the University of Southern California in June 2013. Dr. Ogun has been employed as a physician by CDCR since October 2013. In August and September of 2016, Dr. Ogun saw plaintiff on four occasions.

Defendant Randolph Wilson is a physician's assistant employed at CCI. He has practiced as a physician's assistant since 2007 and asserts he has extensive experience with the diagnosis and treatment of skin conditions. He met plaintiff on one occasion. During that meeting, he interviewed and examined plaintiff as part of the first level review of plaintiff's grievance relating to the medical care provided by Dr. Tate.

Defendant Sam Shiesha, M.D., has been employed at CCI as a physician since 2009 and is the chief medical executive. Dr. Shiesha is board certified in family medicine and, prior to joining CCI, taught medicine in New York for four years and in California for ten years. Dr. Shiesha did not treat plaintiff. He handled the second level appeal of plaintiff's grievances.

Randall Hrabko, M.D., a dermatology specialist, also was named as a defendant by plaintiff. Using Telemedicine, Dr. Hrabko saw plaintiff on June 15, 2016. The record contains no proof of service showing Dr. Hrabko received the summons and complaint; he did not appear in the trial court or in this appeal. Consequently, for purposes of this opinion, "defendants" refers to Drs. Tate, Ogun and Shiesha and physician's assistant Wilson.

4

*Treatment at CCI*

In June 2015, plaintiff was transferred to Corcoran State Prison and placed in the Segregated Housing Unit (SHU). In July 2015, plaintiff submitted sick call forms and was treated by the prison's healthcare staff. Through December 2015, the medical staff gave plaintiff a variety of antibiotics for a staph infection.

On or about April 18, 2016,[3] plaintiff was transferred from Corcoran State Prison to CCI. Plaintiff alleges that within 72 hours of his arrival at CCI, Dr. Tate discontinued the treatment of his skin infection without any type of a medical examination and sent nurses to plaintiff's cell to confiscate all antibiotics and fungal cream. Plaintiff alleges that discontinuing his treatment without a doctor's visit or examination, standing alone, was medical malpractice. Plaintiff also alleges that Dr. Tate cancelled a dermatologist referral and plaintiff had to appeal to have the referral reinstated.

On May 3, plaintiff had his first clinic visit with Dr. Tate. Dr. Tate's declaration asserts (1) plaintiff complained of an itchy skin rash on his back and shoulders and said it had been present for over a year; (2) the condition had been treated with hydrocortisone cream, oral doxycycline and clotrimazole cream; (3) plaintiff did not believe these medications had been particularly effective; (4) Dr. Tate reviewed a medical report from Corcoran and examined planitiff's skin; (5) Dr. Tate diagnosed plaintiff "with dermatitis, not otherwise specified"; and (6) Dr. Tate prescribed Vitamin A and D ointment topically twice per day as needed and called for a return consultation in 30 to 45 days.

On May 10 and June 7, Dr. Tate saw plaintiff for an unrelated inguinal hernia condition. Dr. Tate's declaration states: "I observed that [plaintiff's] skin was warm and dry with no lesions. I noted on each occasion that the dermatitis had clinically improved."

---

[3] Subsequent references to dates are to dates in 2016 unless otherwise stated.

On June 10, Dr. Tate saw plaintiff to follow up on his skin condition. Dr. Tate's declaration asserts plaintiff said something had started on his back the day before and he scraped it well and took a long shower; it had improved to the point that it was hard to see; Dr. Tate examined plaintiff's skin, observed it was warm and dry, found no lesions, and saw three pimples on plaintiff's chest of about 3 millimeters that appeared to have been excoriated; Dr. Tate noted that plaintiff's dermatitis not otherwise specified appeared to have healed without physician intervention; and Dr. Tate told plaintiff to return to the clinic if an eruption was full blown so it could be assessed.

On June 15, plaintiff was seen by Dr. Hrabko, a dermatology specialist, through Telemedicine. Plaintiff attached to his complaint a Telemedicine report e-signed by Dr. Hrabko on June 16. The report described the physical examination, conducted by teledermatology camera: "Physical examination reveals a red patch with some excoriations on the right upper shoulder of his back. There are a few other scatter lesions on his back; some are hyperpigmented and appear scarred. Some have increased skin markings." The report stated Dr. Hrabko's impression was "Neurodermatitis/lichen simplex chronicus" and recommended "Clobetasol 0.05% cream applied to affected areas daily x6 months."

On June 23, plaintiff was seen by Dr. Tate for his skin condition. Dr. Tate's declaration stated he examined plaintiff's skin and observed "it was warm and dry and his back appeared clear." Dr. Tate was aware of Dr. Hrabko's suggestion and, consistent with that suggestion, prescribed Clobetasol 0.05 percent topical cream daily for six months. Dr. Tate's declaration states he "ordered a stop and confiscation of the Vitamin A and D ointment and simethicone because they were medically unnecessary due to the new prescription." Dr. Tate had no further involvement in treating plaintiff's skin condition. Dr. Tate's declaration states that, in his professional medical opinion, the

6

treatment he provided for plaintiff's skin condition was well within the standard of care for practicing physicians.

Plaintiff's complaint describes the June 23 visit by alleging Dr. Tate "stated that the theory was that I had 'neurode[r]matitis' a condition where my mind tells myself that something is the[re] and I scratch it!" Plaintiff alleges this was the most outrageous and absurd thing he had ever heard, and he explained to Dr. Tate that it was humanly impossible to have willed the documented chronic lesions and the abscesses that left the vicious scars on his back.

On June 26, plaintiff was released from SHU and transferred to yard 4A at CCI. On July 9, plaintiff submitted an inmate grievance to prison staff complaining about the June 23 visit with Dr. Tate and asserting his skin condition had been misdiagnosed. In the form's section for action requested, plaintiff (1) stated he was left without treatment, was not given a skin culture or biopsy, and was stuck with a festering skin condition; (2) asserted a simple skin culture would easily diagnose the condition; and (3) requested a skin culture and adequate treatment of the skin fungal condition.

Physician's assistant Wilson handled the first level review of plaintiff's health care grievance. On July 14, Wilson interviewed plaintiff and conducted a physical examination. Wilson's declaration states he concluded "there were no impressive findings during this skin examination" and "an invasive skin biopsy was not medically indicated at th[e] time." Wilson concurred in the diagnosis and treatment provided by Dr. Tate and granted the appeal in part by concluding that, if there was no improvement, plaintiff's skin would be examined again and a possible biopsy considered.

Plaintiff was dissatisfied with this response and, on July 20, submitted an appeal for a second level review. Dr. Shiesha handled the second level review. Dr. Shiesha's declaration stated he carefully reviewed all of the information presented during the first level review, noted plaintiff had not presented any new information or argument for the

7

second level appeal, and determined Wilson's decision at the first level was the proper medical treatment for plaintiff's skin condition. Dr. Shiesha checked the box on the form CDCR 602 HC stating the inmate's appeal was "Granted in part."

Plaintiff also was dissatisfied with this response and, on August 4, submitted an appeal for a third level review. On August 31, the third level appeal was denied, which exhausted plaintiff's administrative remedies as to that grievance.[4]

Ten days after plaintiff's appeal for third level review, he submitted another health care grievance, which requested emergency staph infection treatment. The first level review was assigned to Dr. Ogun and, on September 9, she saw plaintiff and interviewed him about his skin condition. Plaintiff reported he had a skin rash on his chest and upper and middle back and stated the rash was itchy and worsening and his prior use of Clobetasol cream provided no relief. Dr. Ogun's declaration states she carefully reviewed the medical records, examined plaintiff, and "observed multiple popular rashes on the back and chest, [which] were hyperpigmented and some appeared cystic. At plaintiff's request, Dr. Ogun performed a wound culture to assess whether he had a bacterial infection. Dr. Ogun discontinued the Clobetasol cream and prescribed a Vitamin A and D ointment, Benadryl, and a moisturizer. Dr. Ogun's declaration asserts: "On September 14, 2016, the wound culture had to be re-performed because of a problem with the sample. On September 18, 2016, I received the laboratory results concerning the wound culture. It showed that there was no growth in normal skin flora, indicating that [plaintiff] was not suffering from cellulitis or a staph infection." A copy of the laboratory results was attached to Dr. Ogun's declaration.

The written response to plaintiff's appeal stated plaintiff's request for treatment of, and medication for, a staph infection was not medically indicated. Plaintiff's request for

---

[4] Also on August 31, Dr. Ogun saw plaintiff for the first time; the visit did not relate to his skin condition.

8

the Clobetasol cream to be discontinued was granted. The response also stated plaintiff would continue to be monitored and would be seen at his next scheduled appointment.

Dr. Ogun's declaration states she met plaintiff again on September 20 and told him the laboratory results did not indicate he had a staph infection, he should continue with the prescribed medications, and his skin condition would continue to be monitored. Dr. Ogun's declaration states plaintiff told her there was improvement in his skin rashes, which were less itchy and not flaring up.

Plaintiff was dissatisfied with the first level response and, on September 26, submitted an appeal for a second level review. Dr. Shiesha handled the second level review. Dr. Shiesha's written response noted CDCR provides "medical services for inmates based on medical necessity, supported by outcome data and based on the judgment of the physician. You may not demand particular medication, diagnostic evaluation, or course of treatment. You have and will continue to receive treatment as deemed appropriate by your provider." The written response stated that, at the second level of review, the appeal was partially granted.

Plaintiff alleges he fully exhausted the administrative remedies available for both of his health care grievances. This allegation is not challenged by defendants' motion for summary judgment.

Plaintiff filed a government claims form in accordance with the requirements of the Government Claims Act (Gov. Code, § 810 et seq.). In November 2016, the Department of General Services rejected plaintiff's claim on the ground it involved complex issues best determined by the courts.

**PROCEEDINGS**

In January 2017, plaintiff completed and signed a personal injury complaint alleging medical malpractice against the defendants. On February 7, 2017, the Kern County Superior Court filed the complaint. In May 2017, plaintiff filed proofs of service

9

of the summons and complaint for Drs. Tate, Ogun, and Sheisha and physician's assistant Wilson.

In June 2017, the defendants, represented by the Attorney General's Office, filed a motion to strike. In September 2017, the trial court issued an order striking the request for punitive damages and the request for damages in the specific amount of $240,000.

In November 2017, defendants filed their answer. They made a general denial and asserted nine affirmative defenses.

On April 6, 2018, defendants filed a motion for summary judgment, a separate statement of undisputed facts, and declarations from each of the four defendants. The declarations of Dr. Ogun and Dr. Tate each contained a paragraph 9 that read: "In my professional medical opinion, the treatment that I provided to Mr. Ordaz for his skin condition was well within the standard of care for practicing physicians. The diagnoses and prescriptions were appropriate to the conditions presented. Mr. Ordaz received from me the medically necessary treatment for his skin condition." The declarations of Dr. Shiesha and physician's assistant Wilson stated that, in their professional medical opinions, "the treatment that was provided to Mr. Ordaz for his skin condition was well within the standard of care for practicing providers."

In July 2018, plaintiff filed an opposition to the motion for summary judgment, a three-page declaration with attachments and exhibits, and a statement of undisputed facts. His declaration asserts (1) Dr. Ogun kept misdiagnosing his severe skin fungus and body ringworms and he begged and begged for medical care but was refused treatment; (2) the resulting physical and mental torment was so bad that he attempted suicide on December 19, 2017; (3) the suicide attempt allowed him to escape from the brutal torture inflicted by defendants; (4) after his transfer to Salinas Valley State Prison, the doctors there determined plaintiff had fungus and bacterial infections; (5) the doctors at Salinas Valley State Prison were shocked at the abuse and negligence inflicted upon plaintiff and

10

immediately started treatment of the infections, prescribing fluconazole, doxycycline, miconazole and ketoconazole and taking a skin biopsy; and (6) the skin biopsy from a lesion on plaintiff's scalp showed there was inflammation from a possible infection. Plaintiff's declaration also asserts (1) Dr. Tate is notorious for misdiagnosing these types of infections and attached a document of unspecified origin as support; (2) Dr. Ogun told plaintiff a skin culture was lost and never made it to the lab and his belief that she removed the lab result from his file and is hiding the result; and (3) he filed complaints against Dr. Ogun with the Medical Board of California.

In September 2018, defendants filed objections and a motion to strike in support of their motion for summary judgment. Defendants argued plaintiff's statement of undisputed facts should be stricken in its entirety because it did not comply with the requirements in section 437c, subdivision (b)(3) for a separate statement opposing a motion for summary judgment. Defendants argued plaintiff's declaration should be stricken in its entirety because it was "rife with arguments, conclusions, speculations, inadmissible opinions, irrelevant statements, hearsay statements and personal invective." Alternatively, defendants argued the court should strike the specific passages of plaintiff's declaration quoted in their objections.[5] Defendants objected to the documents attached to plaintiff's declaration on the grounds of relevancy and plaintiff's failure to authenticate them or present evidence they constituted business records (an exception to the hearsay rule).

Defendants' reply memorandum of points and authorities argued plaintiff had failed to establish any triable issue of material fact and they were entitled to entry of judgment in their favor as a matter of law. Defendants asserted (1) plaintiff's failure to

---

[5] Defendants did not comply with the formatting requirements in Rule 3.1354(b) in presenting their written objections to plaintiff's declaration and the attachments to the declaration. The consequences of this noncompliance are not among the issues addressed in this appeal.

11

comply with the requirements of section 437c and the Evidence Code warranted granting summary judgment; (2) the medical treatment records from Salinas Valley State Prison failed to show that doctors actually diagnosed plaintiff with fungal skin disease, ringworm or folliculitis; (3) plaintiff had ample time to complete any discovery he deemed necessary to oppose the motion; and (4) plaintiff's statement about his beliefs concerning his diagnosis and treatment were not admissible expert opinion. Among other things, defendants urged the trial court to "now exercise its discretion to grant the Motion on the ground that Plaintiff failed to submit a proper responsive statement of facts. (Code Civ. Proc., sec. 437c(b)(3).)"[6]

On September 10, 2018, the trial court held a hearing on the motion for summary judgment. The court announced its tentative ruling to (1) sustain defendants' objections and strike plaintiff's response to their separate statement for failure to comply with section 437c, subdivision (b)(3) and Rule 3.1350(f); (2) sustain defendants' objections to plaintiff's documents; and (3) grant the motion for summary judgment. The court's rationale was that defendants carried their burden on summary judgment, plaintiff did not offer an expert declaration that any of the defendants acted below the standard of care, and plaintiff did not satisfy his burden to create a triable issue of material fact. When plaintiff stated he did not hear the last part of the court's explanation and asked what happened, the court stated plaintiff had to meet the moving party's evidence with sufficient evidence to demonstrate a triable issue of material fact and "that requires an expert declaration." Plaintiff then stated:

> "Well, they don't even have an expert declaration to rebut their expert. I
> mean, what was I supposed to do? I don't understand this. I mean, the
> evidence I presented to the Court after I left the custody of the defendants

---

[6] Defendants' papers made no attempt to inform the trial court of the limits California case law places on a trial court's exercise of this discretion. (See pts. II.A.3. through II.A.5, *post*.)

12

purely is -- I mean, there is triable facts.  There is trouble here, Your Honor. I don't know."

The trial judge stated he did not represent one side or the other and that, as a judge, he must adjudicate matters as they come before him according to the law.  The judge also stated "for the record that I'm well aware of the difficulties that incarcerated civil litigants have, and I do accommodate."

Plaintiff argued the evidence he presented about his treatment at Salinas Valley State Prison immediately after he left defendants care clearly shows there was intentional misdiagnosis and medical negligence at CCI.  Referring to the fact that defendants acted as their own experts, plaintiff argued they could not "even find an expert to back up what they were saying or substantiate their claims.  I mean, nobody in their right mind would try to substantiate … what they did."[7]

After hearing further argument, the trial court stated "the matter stands submitted. I'll follow the law in my ruling.  Thank you."  On September 12, 2018, the court filed a minute order containing its written ruling on the motion for summary judgment.  The court struck plaintiff's statement of undisputed facts for failure to comply with section 437c, subdivision (b)(3) and Rule 3.1350(f); struck plaintiff's declaration for failing to comply with California law; struck each passage of plaintiff's declaration specified in defendants' objections; and sustained defendants' objections to plaintiff's documents. The ruling stated defendants carried their burden, plaintiff did not offer an expert declaration, and plaintiff did not satisfy his burden of demonstrating a triable issue of material fact.  The court granted the motion for summary judgment and directed counsel for defendants to prepare an order.

---

[7] Thus, plaintiff's earlier statement that defendants "don't even have an expert declaration to rebut their expert" appears to mean that defendants did not present a declaration from an *independent* expert to rebut the diagnosis and treatment provided by CDCR's medical professionals at Salinas Valley State Prison.

13

Later in September, the court signed and filed an order on defendants' motion for summary judgment and entry of final judgment. Plaintiff filed a timely appeal.

**DISCUSSION**

I. SUMMARY JUDGMENT MOTIONS

A. <u>Basic Principles</u>

Summary judgment is a mechanism that cuts through the parties' pleadings and allows the court to determine whether a trial is necessary to resolve their dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) Properly granted summary judgment motions have "a salutary effect, ridding the system, on an expeditious and efficient basis, of cases lacking any merit." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248 (*Nazir*).)

A motion for summary judgment "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A moving party defendant is entitled to judgment as a matter of law when it establishes by admissible evidence that the "action has no merit." (§ 437c, subd. (a)(1).) This no-merit standard is met when a defendant carries it burden of showing "that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to the cause of action." (§ 437c, subd. (p)(2); see *Aguilar*, *supra*, 25 Cal.4th at pp. 849–850; *Pierson v. Helmerich & Payne Internat. Drilling Co.* (2016) 4 Cal.App.5th 608, 616–617 (*Pierson*).)

B. <u>Standard of Review</u>

Under long-established principles, appellate courts conduct a de novo review of an order granting a motion for summary judgment. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 (*Guz*).) De novo is a Latin phrase meaning "from the beginning." Accordingly, an appellate court conducting a de novo review does not defer to the

14

decisions made in the trial court but examines the motion as if the trial court had never ruled on it.  This de novo review requires the appellate court to undertake the same three-step analysis applied in the trial court and reach its own determinations at each step. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858; see § 473c, subd. (p)(2).)

The first step for a court analyzing a motion for summary judgment—an important step in this case—is to "identify the issues framed by the pleadings."  (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064 (*AARTS*); see *Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1602 (*Brantley*).)  A defendant's motion is directed to the plaintiff's allegations and must show "there is no factual basis for relief on *any theory reasonably contemplated by the opponent's pleading*."  (*AARTS, supra*, at p. 1064, italics added.)

The second step involves determining whether the moving party has satisfied its initial burden of producing evidence "to make a prima facie showing of the nonexistence of any triable issue of material fact ...."  (*Aguilar*, *supra*, 25 Cal.4th at p. 850; see *Brantley*, *supra*, 42 Cal.App.4th at p. 1602.)  "There is a triable issue of fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850, fn. omitted.)  Thus, a defendant moving for summary judgment must "present evidence that would require ... a trier of fact *not* to find any underlying material fact more likely than not."  (*Id*. at p. 845.)

Only if the moving party has met this burden does the court proceed to the third step and determine whether the opposition has demonstrated a triable issue of material fact.  (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

The three-step analysis is not always the starting point for an appellate court reviewing a summary judgment because sometimes procedural or evidentiary issues need

to be resolved first. For example, in *Nazir*, the First District began by addressing the trial court's rulings on objections to the evidence. (*Nazir*, *supra*, 178 Cal.App.4th at p. 254.) In this appeal, we begin with a procedural issue involving the papers submitted by plaintiff in opposition to the motion for summary judgment.

## II.     IMPROPER SEPARATE STATEMENT

### A.     General Principles

#### 1.     *Separate Statement Requirement*

The trial court's ruling began by addressing defendants' objections and motion to strike. One of the objections was that plaintiff's statement in opposition to summary judgment did not comply with the form and content requirements set forth in section 437c, subdivision (b)(3) and Rule 3.1350(f). The trial court agreed and, as a result, struck plaintiff's statement. Accordingly, we consider the procedural requirement that a party opposing a summary judgment motion file a separate statement in opposition to the motion and the more significant question of what a trial court should do when the requirement is not satisfied. (See § 437c, subd. (b)(3); Rule 3.1350(e)(2), (f).)

The requirement for separate statements has been described as "an indispensable part of the summary judgment or adjudication process." (*Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902.) Subdivision (b)(3) of section 437c provides in part: "The opposition papers *shall include* a *separate statement* that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed." (§ 437c, subd. (b)(3), italics added.) Besides responding to the facts stated in the moving party's separate statement, an opposing party's separate statement "*shall* set forth plainly and concisely any other material facts the opposing party contends are disputed." (*Ibid*., italics added.) "Under general rules of statutory interpretation, 'shall' denotes something is mandatory." (*Guardianship of C.E.* (2019) 31 Cal.App.5th 1038, 1051.) Therefore, mandatory

16

language directs parties opposing a summary judgment motion to file a separate statement that identifies the disputed material facts and that follows each disputed material fact with "a reference to the supporting evidence." (§ 437c, subd. (b)(3).)

The mandatory language describing the opposition papers should not be viewed in isolation but is best interpreted within the framework of the three-step analysis applied to summary judgment motions. Under that framework, the opposing party's papers are considered only after the court has completed the first two steps of the analysis. Consequently, if the moving party does not carry its initial burden, the motion is denied without ever reaching the opposing party's papers and evidence. (See *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 121 (*Powell*) [if defendant fails to make initial showing, the motion is denied and it is unnecessary to examine the plaintiff's opposing evidence].) The sequence in which issues are addressed has caused California courts to recognize the principle that, even when a summary judgment motion is unopposed, "the moving party still has the burden of eliminating all triable issues of fact" before the court may grant summary judgment. (*Wright v. Stang Manufacturing Co.* (1997) 54 Cal.App.4th 1218, 1228 (*Wright*); see *Harman v. Mono General Hospital* (1982) 131 Cal.App.3d 607, 613 [unopposed motion should not have been granted; judgment reversed]; § 437c, subd. (p)(2) [moving party defendant's burden].) As described in parts II.A.4. and II.A.5. of this opinion, this basic principle has implications for how courts handle an improper or deficient separate statement in opposition to a summary judgment motion.

### 2. Form and Content Requirements

A separate statement in opposition to a summary judgment motion is improper or deficient if it does not comply with the instructions contained in Rule 3.1350. First, Rule 3.1350(f) identifies the contents that must be included in a separate statement in opposition to the motion for summary judgment. Second, Rule 3.1350(h) describes the

17

two-column format the moving party's and the opposing party's separate statements must use.

In the left column, the opposing party (1) must set out word-for-word each material fact claimed by the moving party to be undisputed and (2) must set out, immediately below those words, the evidence that the moving party asserted establishes the fact, along with the moving party's reference to exhibits. (Rule 3.1350(f)(1).) In the right column, directly opposite the word-for-word repetition of the moving party's statement of an undisputed fact, the opposing party must state "whether that fact is 'disputed' or 'undisputed.' " (Rule 3.1350(f)(2).) When a fact is disputed, the word "disputed" in the right column must be followed by the opposing party's statement of the nature of the dispute and a description of the evidence that supports the opposing party's position that the fact is disputed with a citation to the exhibit, title, page and line numbers where that evidence is located. (Rule 3.1350(f)(2).) Rule 3.1350(h) includes examples of how to comply with the foregoing requirements.

### 3. *Discretion Relating to Noncompliance*

The consequences of failing to file a separate statement or filing a separate statement that does not meet the requirements of section 437c, subdivision (b)(3) and Rule 3.1350(f) and (h) are addressed in part by the last sentence of subdivision (b)(3): "Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." Ordinarily, "may" is construed as permissive, especially where the same statutory provision uses both "shall" and "may." (*In re J.N.* (2006) 138 Cal.App.4th 450, 457, fn. 4.) Here, the use of "may" and the phrase "in the court's discretion" unequivocally grants the trial judge discretionary authority.

As a general rule, a court's discretion is not absolute or unfettered. (See *Nakamura v. Parker* (2007) 156 Cal.App.4th 327, 337 (*Nakamura*).) Instead, "[t]he

18

scope of discretion always resides in the particular law being applied by the court, i.e., in the 'legal principles governing the subject of [the] action....' " (*Ibid*.; see *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1144 ["the trial court's discretion is limited by the applicable legal principles"].)  In this appeal, we consider two of the limitations on a trial court's discretion to grant a motion for summary judgment on the ground the opposing party's separate statement failed to comply with applicable requirements.

4.     *Notice and Opportunity to File Proper Separate Statement*

First, when an opposing party's separate statement is improper or deficient, "an immediate grant of summary judgment is, in most instances, too harsh a consequence." (*Collins*, *supra*, 144 Cal.App.4th at p. 74.)  The appropriate exercise of discretion is to give the opposing party an opportunity to file a proper separate statement.  (*Parkview Villas Assn., Inc. v. State Farm Fire & Casualty Co.* (2005) 133 Cal.App.4th 1197, 1210–1211 (*Parkview Villas*) [trial court abused its discretion in granting summary judgment motion without providing plaintiff an opportunity to correct deficiencies in separate statement]; see *Nazir*, *supra*, 178 Cal.App.4th at pp. 262–263 [dictum stating it would have been error for trial court to strike or totally disregard plaintiff's noncompliant separate statement and then immediately grant defendant's motion for summary judgment].)  In *Collins*, the court reviewed existing case law and, based on that precedent, identified in specific terms the proper course of action:  "The trial court specified deficiencies in appellants' initial filing, identified the precise manner in which those deficiencies could be rectified, and afforded appellants ample opportunity to prepare new papers in compliance with applicable rules.  *Precisely this and no more was required*." (*Collins*, *supra*, at p. 74, italics added.)

More recently, in a decision filed about 15 months before the trial court ruled on defendants' motion, the First District addressed the trial court's handling of a motion for

19

summary judgment where the opposing party's separate statement was defective. (*Rush v. White Corp.* (2017) 13 Cal.App.5th 1086, 1100.) In concluding the trial judge did not abuse his discretion, the court stated that the judge "did just as *Parkview Villas* said. He postponed the hearing, to allow plaintiffs to submit a proper separate statement." (*Ibid*.) The grant of summary judgment in *Rush* did not involve an abuse of discretion because the plaintiffs, despite being given notice and opportunities to cure the defects, did not cure the defects. (*Id*. at p. 1101.)

### 5. *Moving Party Must Carry Initial Burden*

Second, the statutory discretion to grant a motion for summary judgment when the opposing party's separate statement is improper or deficient is limited by a corollary derived from the previously discussed principle that "even if no opposition is presented, the moving party still has the burden of eliminating all triable issues of fact." (*Wright, supra*, 54 Cal.App.4th at p. 1228; see § 437c, subd. (p)(2) [moving party defendant's burden].) The corollary states that a plaintiff's submission of an improper or deficient separate statement does not relieve the moving party defendant of its initial burden of showing the plaintiff's cause of action has no merit. (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 416.) "An order based upon a curable procedural defect (such as the failure to file a separate statement), which effectively results in a judgment against a party, is an abuse of discretion." (*Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1161.) Thus, if a plaintiff opposing summary judgment files a defective separate statement, the trial court may grant a defendant's motion for summary judgment only after examining the moving papers and evidence and determining the defendant carried the initial burden of showing the causes of action alleged in the plaintiff's complaint have no merit.

B.    Opportunity to File a Proper Separate Statement

In this case, the trial court's minute order stated the court struck plaintiff's separate statement filed July 25, 2018 for failure to comply with section 437c, subdivision (b)(3) and Rule 3.1350(f).  The trial court's order, like defendants' briefing in that court and on appeal, makes no reference to the general principle that, "in most instances," the immediate grant of summary judgment is too harsh a consequence when a separate statement fails to comply with applicable requirements.  (*Collins*, *supra*, 144 Cal.App.4th at p. 74.)  As a result, neither the trial court nor defendants reached the question of whether the circumstances of this case are different from "most instances" in a way that justifies denying the opposing party an opportunity to file a proper separate statement.

We could end our inquiry at this point and conclude the trial court abused its discretion by failing to (1) specify the deficiencies in plaintiff's separate statement and related declaration, (2) identify the precise manner in which those deficiencies could be rectified, and (3) afford plaintiff an ample opportunity to prepare new papers in compliance with applicable rules.  (*Collins*, *supra*, 144 Cal.App.4th at p. 74 [precisely this and no more is required].)  However, we will undertake a further examination and consider whether to create a new (or apply an existing) exception to the general rule that gives the party opposing the summary judgment motion an opportunity to file a proper separate statement.

We have located no case law or secondary authority holding that self-represented litigants fall outside the general rule that gives parties opposing summary judgment an opportunity to file a proper separate statement.  Indeed, a judicial decision involving a self-represented litigant suggests that such an exception to the general rule is not recognized by California courts.  (See *Security Pacific National Bank v. Bradley* (1992) 4 Cal.App.4th 89, 99 [pro per defendant Bradley did not file a separate statement

21

responding to the facts bank contended were undisputed; trial court erred in granting summary judgment based on Bradley's failure to file a separate statement].) Furthermore, in view of the general principle that the rules of civil procedure apply equally to parties represented by counsel and those who are self-represented (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984–985), we decline to recognize such an exception based on an opposing party's status as a self-represented litigant.

Similarly, we have located no case law or secondary authority holding indigent prisoners do not receive the benefit of the general rule. We decline to adopt such an exception because it could be regarded as infringing indigent prisoners' statutory and constitutional rights of access to the courts. (See Pen. Code, § 2601, subd. (d); *Smith v. Ogbuehi* (2019) 38 Cal.App.5th 453, 465–468 [overview of self-represented inmate's right of access to the courts].) Finally, based on our review of the appellate record, we have identified no other circumstances that might justify creating a new exception to the general rule that gives the party opposing the summary judgment motion an opportunity to file a proper separate statement. Consequently, we conclude the general rule applies in this case.

Here, the trial court did not apply the general rule and, thus, abused its discretion when it struck plaintiff's separate statement and granted the motion for summary judgment. (See *Nakamura*, *supra*, 156 Cal.App.4th at p. 337 [the scope of court's discretion always resides in legal principles governing the subject before the court].) "The trial court [should have] specified deficiencies in appellants' initial filing, identified the precise manner in which those deficiencies could be rectified, and afforded appellants ample opportunity to prepare new papers in compliance with applicable rules. *Precisely this and no more was required*." (*Collins*, *supra*, at p. 74, italics added.)

III.    INITIAL BURDEN OF PARTY MOVING FOR SUMMARY JUDGMENT

As stated earlier, California courts also have interpreted the discretionary authority granted in the last sentence of section 437c, subdivision (b)(3) to mean a plaintiff's failure to submit a proper separate statement does not relieve the moving party defendant of its initial burden of showing the plaintiff's cause of action has no merit. (Pt. II.A.5., *ante*.) Applying this second limitation, we consider whether defendants carried their initial burden—a question that requires us to complete the first two steps of the three-step summary judgment analysis.

A.    Step One:  Issues Framed by the Pleadings

*1.    Basic Principles*

In step one of the three-step analysis, "the court identifies the issues framed by the pleadings." (*Pierson*, *supra*, 4 Cal.App.5th at p. 617.) Identifying these issues is essential to determining the "material" facts that must be addressed in the moving party's papers. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 ["pleadings serve as the outer measure of materiality in a summary judgment proceeding"].)

Stated another way, the claims framed by the pleadings generally limit the scope of the issues properly addressed in a summary judgment motion. (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421 (*Howard*); see *Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1250 [pleadings set the boundaries of the issues to be resolved in a summary judgment proceeding].) Thus, a defendant moving for summary judgment has the burden of negating only those theories of liability alleged in the complaint; the moving party need not address theories not included in the pleadings. (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 290.) When determining what theories of liability are alleged, courts ask whether the pleadings "give *fair notice* to the [party moving for summary judgment] of the theories on which relief is generally being sought." (*Howard*, *supra*, at p. 422, italics added.)

23

### 2. *Scope of Plaintiff's Theories of Liability*

Viewed in general terms, plaintiff's complaint alleges many instances where defendants' conduct constituted medical malpractice. Most of the alleged malpractice involved (1) a failure to properly diagnose plaintiff's skin condition or (2) a failure to provide proper treatment. In addition, the second paragraph of the handwritten statement of facts plaintiff attached to his Judicial Council form complaint alleges that within 72 hours of his arrival at CCI and without a doctor visit or examination, Dr. Tate discontinued the treatment of plaintiff's skin infection and sent nurses to his cell to confiscate all antibiotics and fungal cream. Plaintiff plainly states this act of confiscation without an examination "is malpractice."

This theory of malpractice was not new. Plaintiff also stated it in an attachment to his government claims form (Exhibit 4 to the complaint). The attachment describes how, upon his transfer to CCI, the medications provided at Corcoran State Prison were confiscated and his treatment was discontinued without any type of a medical examination. The attachment asserts "that action alone is medical negligence."

Plaintiff's complaint and attachments clearly framed a medical malpractice claim based on the confiscation, without a medical examination, of plaintiff's medications shortly after his arrival at CCI. Thus, plaintiff gave defendants more than "fair notice" of his theory that confiscation without examination constituted a specific event of medical malpractice.

To summarize, we complete the first step of the summary judgment analysis by concluding plaintiff's complaint frames issues about medical malpractice involving (1) failures to properly diagnose plaintiff's skin condition, (2) failures to properly treat plaintiff's skin condition and (3) a negligent confiscation of previously prescribed medications without any type of examination. Identifying each instance of malpractice alleged is important because "[s]ummary judgment is improper unless the moving party

24

negates every alternative theory of liability presented in the pleadings." (*Hufft v. Horowitz* (1992) 4 Cal.App.4th 8, 23 (*Hufft*).)

   B. <u>Step Two:  Moving Party's Burden</u>

    *1. Basic Principles*

Having identified plaintiff's theories of malpractice, we proceed to the second step of the summary judgment analysis and "exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of *negating each of the plaintiff's theories* and establishing that the action was without merit." (*Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320, italics added.)

In *Pierson*, we described the moving party's burden of negating the plaintiff's theories by stating "[a] motion for summary judgment … will be defective if the moving party fails to (1) accurately identify the facts that are material to the legal theory upon which the motion is based; (2) actually include those material facts in the separate statement; and (3) reference evidence establishing, either directly or by inference, each material fact the moving party claims is undisputed." (*Pierson*, *supra*, 4 Cal.App.5th at p. 617.)  *Hufft* provides an example of a defendant that "paid scant attention to" the plaintiff's breach of warranty claims "and was equally uninterested in a cogent discussion in its brief on appeal." (*Hufft*, *supra*, 4 Cal.App.4th at p. 24.)  As a result, the defendant failed to negate the breach of warranty claims and the appellate court reversed the summary judgment that had been in defendant's favor. (*Ibid*.)

    *2. Elements of a Medical Malpractice Claim*

Medical providers must exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by members of their profession under similar circumstances. (*Barris v. County of Los Angeles* (1999) 20 Cal.4th 101, 108, fn. 1.) " 'The elements of a cause of action for medical malpractice are: (1) a duty to use such

skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage.' " (*Lattimore v. Dickey* (2015) 239 Cal.App.4th 959, 968.)  The first element addressing the standard of care "is the key issue in a malpractice action and can only be proved by expert testimony, unless the circumstances are such that the required conduct is within a layperson's common knowledge."[8]  (*Ibid.*)  "Both the standard of care and a defendant's breach must normally be established by expert testimony in a medical malpractice case."  (*Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467, fn. 1.)

### 3.  *Scope of Defendants' Moving Papers*

Defendants' separate statement makes no mention of the confiscation of plaintiff's medications shortly after his transfer to CCI.  The first undisputed material fact asserted was that plaintiff was transferred from Corcoran State Prison to CCI in April 2016.  The next event addressed in the separate statement is plaintiff's first clinic visit with Dr. Tate on May 3, 2016.  Thus, defendants' separate statement of undisputed material facts omits

---

[8] The "common knowledge" doctrine is a narrow exception to the general rule that expert testimony is needed to evaluate whether a doctor has engaged in medical malpractice.  (*Scott v. Rayhrer* (2010) 185 Cal.App.4th 1535, 1542.)  The common knowledge exception applies and dispenses with the need for expert testimony "if the medical facts are commonly susceptible of comprehension by a lay juror."  (*Gannon v. Elliot* (1993) 19 Cal.App.4th 1, 7.)  Here, we do not resolve, one way or the other, whether the common knowledge exception applies to the confiscation of a recently transferred inmate's medication without any type of examination.  (See *Friedman v. Dresel* (1956) 139 Cal.App.2d 333, 343 [failure to x-ray hip, if plaintiff's testimony was believed, would constitute a breach of the standard of care as a matter of common knowledge]; *Agnew v. City of Los Angeles* (1947) 82 Cal.App.2d 616, 619 [after plaintiff had fallen, a doctor, without examining the patient, accepted the diagnosis of receiving hospital and failed to examine her or have an x-ray taken; use of x-rays as diagnostic aid in cases of fractures is a matter of common knowledge and failure to take x-rays in such cases is a failure to use the degree of care and diligence ordinarily used by physicians; expert testimony was not needed].)

many of the facts material to the theory of medical malpractice based on the confiscation of plaintiff's medication without any type of medical examination.

Similarly, defendants' declarations and their memorandum of points and authorities in support of their motion for summary judgment make no reference to the confiscation of medication. Accordingly, defendants have not attempted, much less succeeded, in carrying their burden of negating one or more elements of that particular theory of medical malpractice. Therefore, we conclude defendants have failed to accurately identify the facts that are material to all of the theories of liability alleged in plaintiff's complaint, failed to include those material facts in their separate statement, and failed to reference evidence establishing each material fact the moving party claims is undisputed. (*Pierson*, *supra*, 4 Cal.App.5th at p. 617.) The undisputed facts demonstrated by defendants' moving papers do not negate the theory of medical malpractice alleging the confiscation of plaintiff's medication without any type of medical examination. It necessarily follows that the trial court erred in concluding defendants carried their burden as to *all* of plaintiff's claims and, therefore, were entitled to summary judgment. (See *Hufft*, *supra*, 4 Cal.App.4th at p. 23 [summary judgment is proper only where defendant negates every theory of liability presented in plaintiff's pleadings].)

C. Appellate Relief

1. *Reversal*

Based on the conclusion that defendants failed to negate all of plaintiff's theories of medical malpractice, the summary judgment entered in favor of the defendants must be reversed. As a result of the reversal of the summary judgment, the matter must be remanded for further proceedings.

Next, we consider whether summary adjudication of specific claims or issues of duty is appropriate. Defendants' notice of motion states that, if for any reason a complete

27

summary judgment cannot be had, they will seek on order of summary adjudication on four issues. The issues identified are whether each of the four defendants met the standard of care in providing medical services to plaintiff. We decline to resolve whether summary adjudication of these issues is appropriate for two reasons.

First, defendants' separate statement failed to comply with Rule 3.1350(d)(1), which requires the separate statement to "separately identify" (A) each cause of action, claim for damages, or issue of duty that is the subject of the motion and (B) each supporting material fact claimed to be without dispute with respect to the particular cause of action, claim for damages, or issue of duty for which summary adjudication is sought. (See also, Rule 3.1350(h) [format for separate statements supporting motion for summary adjudication must include a heading stating the issue to be adjudicated].) Second, even if defendants' separate statement were properly formatted and included the necessary material facts for each issue to be adjudicated, plaintiff should have been given an opportunity to file a proper separate statement responding to defendants' separate statement. (See pt. II.B., *ante*.)

### 2. *Proceedings on Remand*

To reduce the ambiguity in the instructions that, after remand, the trial court "conduct further proceedings consistent with this opinion," we identify a few options that fall within the trial court's discretionary authority.

First, the trial court could enter an order (1) denying the motion for summary judgment and (2) declining to resolve the summary adjudication of specific claims or issues for the same reasons adopted by this opinion.

Second, the trial court could allow defendants to withdraw their motion and refile a revised motion. There are a variety of ways defendants might revise their motion. They might expand it to address plaintiff's theory that confiscation of medication without

28

an examination constituted medical malpractice.[9]  They might revise their moving papers to properly seek summary adjudication of particular medical malpractice claims, which would include formatting their separate statement in a manner that complies with Rule 3.1350.  Or, they might do both.

In comparison, it would not be appropriate to allow the motion for summary judgment to remain in its current form and afford plaintiff the opportunity to file a separate statement that complied with section 437c, subdivision (b)(3) and Rule 3.1350. The moving papers, in their current form, do not establish defendants are entitled to summary judgment and, therefore, do not support an order requiring plaintiff to respond. (See *Powell*, *supra*, 151 Cal.App.4th at p. 121 [if the moving party does not carry its initial burden, the motion is denied without ever reaching the opposing party's papers and evidence].)

### 3. *Other Issues*

Because reversal is required on the foregoing grounds, we do not address other issues raised by the parties or arising during the course of our independent application of the three-step summary judgment analysis.  Those issues included, but are not limited to, (1) plaintiff's contention that he was rushed to summary judgment and the trial court abused its discretion in not giving him an opportunity to file (i.e., propound) discovery (e.g., form interrogatories, special interrogatories, requests for admission, requests for production of documents, and subpoenas[10]); (2) how the restrictions placed on plaintiff

---

[9] If defendants file a revised motion addressing this theory, they should consider presenting evidence demonstrating the common knowledge exception does not apply to a confiscation without an examination of prescribed medications.  (See fn. 8, *ante*.)

[10] California's Civil Discovery Act (§§ 2016.010–2036.050) governs the various methods for discovery allowed in civil lawsuits.  The methods for discovery between the parties are listed in § 2019.010.  Methods of discovery from a nonparty include a subpoena commanding the nonparty to attend and testify at a deposition, a subpoena

after his attempted suicide affected his ability to propound discovery; (3) how the four transfers of plaintiff from institution to institution affected his access to his property (i.e., legal papers) and the amount of time needed to conduct discovery and respond to the summary judgment motion; (4) whether the trial court abused its discretion by not issuing a scheduling order giving plaintiff more time; (5) whether the trial court erred in sustaining defendants' objections to plaintiff's declaration and documentary evidence; (6) plaintiff's contention that doctors at Folsom State Prison tried to bury the facts of misdiagnosis and mistreatment at CCI after his transfer to Folsom State Prison from Salinas Valley State Prison; (7) whether the matters set forth in defendants' declarations had an adequate foundation and were stated with sufficient certainty to support the expert opinion's expressed in those declarations (this question involves the principles this court discussed under the heading "Expert Evidence Requirement" in *Powell*, *supra*, 151 Cal.App.4th at pages 123 through 126); and (8) whether a medical professional defendant's own opinion that he or she met the standard of care in treating the plaintiff has sufficient credibility to establish a prima facie case that carries the defendant's initial burden in step two of the summary judgment analysis.

## DISPOSITION

The order on defendants' motion for summary judgment and entry of final judgment, filed September 24, 2018, is reversed. On remand, the trial court shall vacate its September 12, 2018 minute order and shall conduct further proceedings consistent with this opinion.

The parties shall bear their own costs, if any, on appeal because the prevailing party obtained a waiver of fees and costs on appeal.

---

commanding the nonparty to produce business records, and a subpoena commanding both. (§§ 2020–2020.510.)